.Pierrepont, J.
—Each partner contributed the same amount of capital; had there been no special agreement, each would be entitled to half the profits, and each would be liable for half the loss.
It was competent for the parties to agree, that one should render extra services, taldng his risk of compensation out of anticipated profits, and that such compensation should be half of the profits if any were made, and that the other half should be equally divided; had such been the agreement in terms, the capital left in this case would be equally divided.
A written contract of partnership, like any other contract in *111 writing, is to be construed according to the true intent of the parties, as fairly deduced from the terms used.
I think the fair construction of this contract is such, as to amount to an agreement, that Hasbrouck should have half the profits for his extra services, if profits were made, and no compensation for such services, except in that way; leaving the remaining profits to be divided equally if profits there were, and the losses to be shared equally if losses were sustained.
The balance of capital remaining (the fund in question), should be divided equally between the partners, and judgment should be entered accordingly.
Slossoh, J.
—We think the intention of the parties sufficiently manifested by the agreement itself. Apart from the provisions as to profits and labor, a perfect equality exists between the two, each is to contribute an equal amount of capital, but Hasbrouck is to perform all the work of the partnership, with the exception of what might conveniently be done by Childs in Hew York without prejudice to his other business; moreover Hasbrouck, though a resident in the State of Hew York at the time the partnership was formed, was to remove to, and reside during the five years provided for its continuance, at Keokuk, in Iowa, where the business was to be transacted. There was a propriety therefore, in making a discrimination between them as to the profits, and in giving the larger share to the partner who was to do the larger share of the work, and on whose industry and ability depended the success of the enterprise.
Whether we call this difference, a compensation for extra service, payable out of profits, or call it a larger share of profits by way of compensation is a matter of no moment, as it is very manifest, that compensation for service was the sole object of the provision.
Had no discrimination been made in the agreement as to profits, each would have shared equally, not only on the general presumption, in absence of proof to the contrary, that partners are interested equally, but because each had contributed an equal amount of capital, notwithstanding the services to be rendered by one were wholly disproportionate to those which the other was to bestow. The fact that a discrimination is made, *112 there being no cause for making 'it, in any difference in capital contributed, indicates clearly that it was intended to compensate for the superior service to be rendered by Hasbrouck. If this be so, it is quite manifest that the parties could never have intended that Hasbrouck was to run a risk in respect to his capital, three times greater than that incurred by Childs; in other words, that he was to bear losses in the same proportion he was to receive profits, even to the entire absorption of all his capital, and possibly the bringing him in debt to his copartner besides.
There is nothing unreasonable in holding the intention of the parties to have been that losses were to be borne equally in consideration of an equal contribution of capital, while profits were to be shared unequally in consideration of the difference in services to be rendered. Hasbrouck absolutely stipulates to render the greater service, and his compensation is to depend wholly on the success of the trade, the making of profits. If no profits are made he loses his services, and also the interest on Ms capital, while Childs who has rendered no service, or comparatively none, loses the interest on Ms capital. They are then remitted to the position in which they would have stood had no discrimination been made in respect to profits. If the losses intrench on the capital, they must be equally borne, and if after all the debts are paid any capital remains, it must be equally divided.
I think tMs to be the fair spirit of the agreement, the understanding of the parties, and the true rule of construction.
Judgment should be entered that the fund, being a residue of capital (all the debts being paid), be equally divided between the partners.